**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ISAIAS LOPEZ NUNEZ,<br><br>                          Petitioner,<br><br>v.<br><br>MARTIN GAMBOA, Warden,<br>                          Respondent. | Case No.:  21cv2046-JES (SBC)<br><br>**ORDER DENYING FIRST AMENDED PETITION FOR WRIT OF HABEAS CORPUS AND GRANTING A LIMITED CERTIFICATE OF APPEALABILITY** |

Presently before the Court is a First Amended Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 by Isaias Lopez Nunez, a state prisoner proceeding *pro se* and *in forma pauperis*. (ECF No. 17.) Respondent has filed an Answer and lodged the state court record. (ECF Nos. 22, 23.) Petitioner has filed a Traverse.[1] (ECF No. 36.)

## I.     BACKGROUND

A jury found Petitioner guilty of twelve counts of rape of a child under fourteen years old, three counts of committing a lewd act on a child under fourteen years old, and that the offenses were committed against multiple victims. (Lodgment No. 1, ECF No.

---

[1] Although this case was referred to United States Magistrate Judge Steve B. Chu pursuant to 28 U.S.C. § 636(b)(1)(B), the Court has determined that neither a Report and Recommendation nor oral argument are necessary for the disposition of this matter. *See* S.D. Cal. CivLR 71.1(d).

23-1 at 224-38.) He was sentenced to consecutive terms of 15-years to life on all fifteen counts for a total term of 225 years to life in state prison. (*Id*. at 239.)

Petitioner appealed, raising claim one presented here, that he was sentenced on the three lewd act counts under current law rather than the law in effect at the time of the offenses in violation of ex post facto principles. (Lodgment No. 3, ECF No. 23-11.) The state appellate court found the claim forfeited by a failure to object at sentencing and that it failed on the merits. (Lodgment No. 6, ECF No. 23-14.) A petition for review to the California Supreme Court raising the claim was summarily denied. (Lodgment Nos. 7-8, ECF Nos. 23-15, 23-16.)

After the original federal Petition was filed in this action, the Court granted Petitioner's motion for stay and abeyance to exhaust state court remedies as to claim two, ineffective assistance of trial counsel. (ECF No. 11.) After exhaustion, Petitioner filed the First Amended Petition containing both claims and requesting an evidentiary hearing. (ECF No. 17.)

Respondent answers that federal habeas relief is unavailable because claim one is procedurally defaulted and without merit, claim two is untimely and without merit, and the state court adjudication of both claims is objectively reasonable. (ECF No. 22.)

## II.    TRIAL PROCEEDINGS

The following statement of facts is taken from the appellate court opinion on direct appeal. The Court defers to state court findings of fact and presumes they are correct. *Sumner v. Mata*, 449 U.S. 539, 545-47 (1981).

> Defendant and his wife had six children, four girls and two boys. Es.N. was the oldest girl, followed by E.N., M.N., C.N., and two younger boys. Defendant and his wife were violent and physically abusive toward each other. The children were all taken to the Polinsky Children's Center when E.N. was a young teen and M.N. and C.N. were about six to eight years old. E.N. did not mention the abuse because defendant had told her the children would be separated if she talked to police or social workers. Es.N. did not return home with the family. The children's mother left the family after they returned home, leaving the children alone with defendant.

2

Counts 1–6: Aggravated Sexual Assault (Rape by Force or Duress) of and Lewd Act on a Child Under 14, E.N., November 30, 1994 through September 13, 1997

E.N. was born in September 1983. She was 35 years old when she testified at trial. Starting when E.N. was five years old, defendant penetrated E.N.'s vagina with his fingers when he washed her and told her to touch his penis when he took showers with her. Defendant did this about three times per week, until E.N. was seven or eight years old. From the time E.N. was about eight or nine, defendant penetrated her vagina with the tip of his penis every other day for about a year. Defendant inserted his penis all the way into E.N.'s vagina when she was 10, although she told him that it hurt. E.N. asked why he hurt her. Defendant said, "You're a big girl now. You can take it." After a break of a few days, defendant had intercourse with E.N. every day from then on until she turned 17 years old. E.N. felt like she could not say no to Defendant.

E.N. left home when she was 17. She told police about the abuse when she was 32 years old, and her sisters talked to the police after E.N.

Counts 7–14: Aggravated Sexual Assault (Rape by Force or Duress) of and Lewd Act Upon a Child Under 14, C.N., January 1, 1997-May 30, 2003

C.N., the youngest girl in the family, was born in May 1989. From the time C.N. was five until she was about 10 years old, Defendant touched her vagina almost every other day. When C.N. was 10 and continuing thereafter, defendant inserted part of his penis into her vagina. He penetrated her vagina completely when she was about 13 years old, and continued to rape her about every other day until she turned 18 years old.

Count 15: Lewd Act on a Child Under 14, M.N., January 1, 1996 - May 30, 2003

M.N. was born in June 1988. She was 30 when she testified at trial. Defendant first penetrated M.N.'s vagina with his penis when she was about six years old. He took her into the bedroom, put M.N. on the bed and forcibly pulled down her pants and underwear. Defendant raped M.N. and touched her vagina with his bare hand about once a week from the time she was six or seven until she was 15 years old.

/ / /

Defendant's Admissions

> E.N. and C.N. made a pretext call to defendant. E.N. accused defendant of having sex with her and C.N. throughout their childhood. Defendant apologized. Defendant called C.N. a week later and offered to give her $200 if she would stay silent.

(Lodgment No. 6, *People v. Nunez*, D075261, slip op. at 2-4 (Cal.Ct.App. Aug. 10, 2020).)

## III.   PETITIONER'S CLAIMS

(1)  The trial court abused its discretion and denied Petitioner due process under ex post facto principles by failing to sentence him under the law as it existed at the time of the offenses, which, unlike current law, provided discretion to consider probation and concurrent or lesser sentences on the three lewd act counts. (ECF No. 17 at 12, 15-41.)

(2)  Petitioner was denied his right to the effective assistance of counsel by trial counsel's failure to: (1) excuse for cause seven jurors, (2) investigate and present medical evidence of Petitioner's hearing loss, (3) move to exclude the pretext call, (4) introduce medical examinations of the victims and testimony of the examining doctor, and (5) object to improper argument by the prosecutor. (*Id.* at 12, 41-65.)

## IV.   DISCUSSION

### A.   Claim One

Petitioner argues here, as he did in state court, that during the entire period of the charged offenses, January 1, 1996 through May 30, 2003, the law in effect granted the trial court discretion to consider probation eligibility and concurrent or lesser sentences on the three counts of committing lewd acts on a child, but the trial court abused its discretion and denied him due process under ex post facto principles when it imposed sentence on those counts under the law as it existed at the time of sentencing which did not allow for such discretion. (ECF No. 17 at 12, 15-41.) He argues the claim was not forfeited by a failure to object because state law does not require an objection at sentencing to the application of an ex post facto law, and that any default should be

excused based on his actual innocence and ineffective assistance of counsel at sentencing. (*Id.* at 16-17, 41.)

Claim one was presented to the state supreme court in a petition for review of the appellate court opinion. (Lodgment No. 7, ECF No. 23-15.) It was denied in an order which stated: "The petition for review is denied." (Lodgment No. 8, ECF No. 23-16 at 1.) Claim one was also presented to the state appellate court on direct appeal and denied in a reasoned opinion. (Lodgment Nos. 3-6, ECF Nos. 23-11, 23-12, 23-13, 23-14.) This Court applies a presumption, which no party has attempted to rebut, that the silent denial by the state supreme court adopted the reasoning of the appellate court. *See Ylst v. Nunnemaker*, 501 U.S. 797, 803-04 (1991); *see also Avila v. Galaza*, 297 F.3d 911, 918 (9th Cir. 2002) (federal habeas courts look to the last reasoned decision of a state court which adjudicated a federal claim on the merits). The appellate court stated:

> When defendant committed lewd acts on each of the victims, the law permitted trial courts to grant probation to offenders who were relatives even when there were multiple victims. The law in effect when the court sentenced Defendant no longer provided for a discretionary grant of probation. Defendant contends that the trial court was not aware of its discretion to grant probation when it sentenced him, and therefore violated the ex post facto prohibition by imposing sentences on the three lewd-act convictions under the current, more severe law. Defendant forfeited any error, and in any event, he has not established error.

> *Proceedings Below*

> Defendant was convicted of committing a lewd act on E.N. between January 1, 1996, and December 31, 1996; committing a lewd act on C.N. between January 1, 1996, and May 30, 2003; and committing a lewd act on M.N. between January 1, 1996, and May 30, 2003; with true findings as to all counts that Defendant committed sexual offenses on multiple victims. The One Strike law, section 667.61, provides for a punishment of 15 years to life (§ 667.61, subd. (b)) for defendants who commit a lewd act against a child under the age of 14 (*id.* at subd. (c)(8)) against multiple victims (*id.* at subd. (e)(4)). Such Defendants are not eligible for probation. (§ 1203.066, subd. (a)(7).)  Before 2006, however, a court had discretion under former section 1203.066, subdivision (c), to grant probation in some circumstances

to defendants who committed lewd acts on more than one child and who were related to the children or members of their household.

Here, the probation report stated that defendant was "absolutely ineligible for a grant of probation pursuant to (section) 1203.066 (, subdivision) (a)(7) in that he has been convicted of (section) 288 (, subdivision) (a) and (section) 269." The prosecutor's sentencing statement said that defendant was statutorily ineligible for probation because he was convicted of sections 269 and 288, subdivision (a), with true findings pursuant to sections 1203.066, subdivision (a)(7) and 667.61, subdivisions (b), (c) and (e). Defense counsel submitted to the court on sentencing.

At sentencing, the court said with respect to the trial testimony, "The things that I heard touched me very, very much. And there's nothing that can be said here or done here to rectify it. . . . There's nothing I can do today that can replace your childhood or bring back any happiness that you deserved." With respect to the convictions, the court said, "It was 9 years of pure Hades for these children." The court concluded that every count of which defendant was convicted was a "separate and distinct act with multiple victims pursuant to (section) 269(, subdivision) (c) (consecutive sentences mandatory)." It then said, "Accordingly, probation is denied, and I am going to—and maybe it's for me that I want everyone to know, and maybe it's just for me, for my satisfaction, that probation is denied."

*Legal Principles*

Both the United States and the California Constitutions prohibit criminal or penal laws that are ex post facto. (U.S. Const., art. I, § 10, cl. 1; Cal. Const. art. I, § 9.) Laws that "retroactively alter the definition of crimes or increase the punishment for criminal acts" are unconstitutional. (*Collins v. Youngblood* (1990) 497 U.S. 37, 43; *People v. Alford* (2007) 42 Cal.4th 749 (Alford).) "California's ex post facto law is analyzed in the same manner as the federal prohibition." (*Alford*, at p. 755, citing *People v. Grant* (1999) 20 Cal.4th 150, 158.)

Once the Legislature has statutorily afforded a benefit, that benefit may only be taken away prospectively. (*People v. Williams* (1987) 196 Cal.App.3d 1157, 1160 (*Williams*).) In *Williams*, the court had struck the enhancements for two prior serious felony convictions after the defendant pleaded guilty. Subsequent law prohibited the striking of the enhancements. (*Id.* at p. 1159.) The People appealed, seeking imposition of the

6

enhancements pursuant to the new law. (*Ibid*.) The appellate court held that application of the new law would have violated the ex post facto clause, and therefore the trial court did not err in striking the defendant's prior conviction enhancements. (*Id*. at pp. 1160–1161.) The court explained, "It is irrelevant to an ex post facto determination that a defendant could have received the same sentence under the old law as he definitely will under the new law. (Citations.) . . . By making mandatory what was previously discretionary, the Legislature has changed the standard by which punishment will be imposed to defendant's disadvantage. Applying these laws to defendant thus runs afoul of the ex post facto clause." (*Id*. at p. 1160.) Because the law permitted probation at the time that defendant committed his acts, he must be afforded the possibility of probation at the time he was sentenced.

*One Strike Law*

The current version of section 667.61, the "One Strike" law, mandates a prison term of 15 years to life for anyone convicted of a lewd act in violation of section 288, subdivision (a) if it was pleaded and proved that the defendant had committed that crime against more than one victim. (§ 667.61, subds. (b), (c)(8) & (e)(4).) The statute in effect when defendant abused the children was different. Before 2006, the One Strike law's sentencing mandate applied to persons convicted of a lewd act in violation of section 288, subdivision (a) "unless the defendant qualifie(d) for probation under subdivision (c) of Section 1203.066." (Former § 667.61, subd. (c)(7), eff. to Sept. 19, 2006.)

Former section 1203.066, subdivision (a) made a person "convicted of committing a violation of Section 288 or 288.5 against more than one victim" presumptively ineligible for probation. (Former § 1203.066, subd. (a)(7), eff. to Dec. 31, 2005 [Footnote: Further references to former section 1203.066 are to this version effective until December 31, 2005]; *People v. Wills* (2008) 160 Cal.App.4th 728, 736.) The defendant could overcome that presumption if the court found five criteria: (1) the defendant was related to the victim or a member of the victim's household; (2) a grant of probation was in the best interest of the child; (3) rehabilitation was feasible; (4) the defendant was removed from the household until the court determined that returning the defendant would be in the best interest of the child; and (5) there was no threat of physical harm to the child if the defendant was granted probation. (Former § 1203.066, subd. (c).) The defendant had the burden of establishing all five criteria. (*People v. Groomes* (1993) 14

7

Cal.App.4th 84, 89 (*Groomes*).) Even if all the factors were satisfied, the court "'retain(ed) the discretion' to find the defendant unsuitable for probation and to order imprisonment." (*People v. Wutzke* (2002) 28 Cal.4th 923, 932, fn. 7; former § 1203.066, subd. (c)(5).) The trial court was required to "state its reasons on the record for whatever sentence it impose(d) on the defendant." (Former § 1203.066, subd. (c).)

*Forfeiture*

Defendant failed to ask the court to consider probation at the time of sentencing and thus has forfeited his claim on appeal. Sentencing claims are forfeited if not timely asserted. (*People v. Scott* (1994) 9 Cal.4th 331, 353 (*Scott*).) Defendant asserts that violations of ex post facto rules are not forfeited, in reliance on *People v. Hiscox* (2006) 136 Cal.App.4th 253, 258–259 (*Hiscox*). In *Hiscox* the trial court imposed punishment based on a law that was effective only after November 20, 1994. The lewd act offenses, however, could have occurred before that date, because the guilty verdict was based on "generic" testimony, i.e., "'testimony describing a series of essentially indistinguishable acts of molestation.'" (*Id*. at p. 256.) Imposition of a punishment on offenses that occurred before the enactment of that punishment were unauthorized by law, as well as ex post facto. A claim of unauthorized punishment is never forfeited because it cannot be imposed under any circumstance. (*Id*. at p. 258.) *Hiscox* is not applicable here, because the sentence imposed on defendant was authorized by the existing law. Defendant failed to ask the court to consider probation, and has forfeited his claims on appeal by failing to bring this contention to the attention of the trial court. (*Scott*, at p. 353.)

*Ineffective Assistance of Counsel*

Defendant counters that if this issue was forfeited, it was due to ineffective assistance of counsel. To prevail on an ineffective assistance of counsel claim, defendant must prove two elements: (1) trial counsel's deficient performance and (2) prejudice as a result of that performance. (*Strickland v. Washington* (1984) 466 U.S. 668, 687 (*Strickland*); *People v. Bell* (2019) 7 Cal.5th 70, 125 (*Bell*).) Representation is deficient if it falls below an objective standard of reasonableness under the prevailing norms of practice. There is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." (*Strickland*, at p. 689; *Bell*, at p. 125.) To show prejudice, the defendant has the burden of showing a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability

is a probability sufficient to undermine confidence in the outcome." (*Strickland*, at p. 694; *Bell*, at p. 125.) If "it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed." (*Strickland*, at p. 697; *People v. Bonilla* (2018) 29 Cal.App.5th 649, 654.)

Even assuming, without deciding, that counsel erred in not asking the court to consider probation, there is no reasonable likelihood that defendant would have obtained a more favorable result in this case. The court expressed its opinion of the victims' lives as children: pure hell. Defendant's lewd touchings involved substantial sexual contact, against three very young girls, hundreds of times. There is no reasonable probability that the trial court would have granted probation to defendant on three counts, while sentencing him to 12 other consecutive terms of 15 years to life.

*No Error*

In addition to the lack of prejudice if counsel performed deficiently in failing to request probation, we find no error on the merits.

Sentencing decisions are reviewed for an abuse of discretion. To demonstrate an abuse of discretion, the defendant has the burden of clearly showing that the sentencing decision was irrational or arbitrary. "'In reviewing the matter on appeal, a trial court is presumed to have acted to achieve legitimate sentencing objectives in the absence of a clear showing the sentencing decision was irrational or arbitrary.'" (*People v. Ferguson* (2011) 194 Cal. App.4th 1070, 1091.) The court must also be aware of its sentencing discretion. An abuse of discretion exists when the court makes a statement, or other evidence shows, that the court is not aware of its discretion. (*People v. Bolian* (2014) 231 Cal. App.4th 1415, 1421 (*Bolian*).) To meet this burden, the defendant must "affirmatively demonstrate error on the face of the record." (*People v. Davis* (1996) 50 Cal. App.4th 168, 172.)

On appeal, we indulge all intendments and presumptions to support the court's decision. The defendant bears the burden of affirmatively showing error. (*People v. Hurtado* (2019) 35 Cal.App.5th 871, 878 (*Hurtado*).) We presume sentencing courts know and follow the law. Therefore, we affirm when the record is silent on the court's reasoning and decisionmaking. "Error may not be presumed from a silent record." (*People v. Brown* (2007) 147 Cal. App.4th 1213, 1229; *Bolian*, *supra*, 231 Cal. App.4th at p. 1421; *Davis*, *supra*, 50 Cal. App.4th at p. 172.)

Defendant has not shown a statement from the court or other evidence that it considered the 15-year-to-life terms mandatory for the three lewd acts. On the contrary, the court considered probation and denied it. The court briefly described the damage done by Defendant, its hope that the victims could recover, and its inability to change the past. The court found each count a separate act, then said, "Accordingly, probation is denied, and I am going to—and maybe it's for me that I want everyone to know, and maybe it's just for me, for my satisfaction, that probation is denied." We acknowledge that the prosecutor and probation officer both told the court that probation was not permissible, but we are not persuaded that the court followed those statements, especially in light of the court's own statements. We presume that the court is informed on the law and not dependent on the parties' statements of law. The record shows that the court considered probation. Defendant has not produced affirmative proof to the contrary. (*Hurtado, supra*, 35 Cal. App.5th at p. 878; *Bolian*, *supra*, 231 Cal. App.4th at p. 1421; *Davis*, *supra*, 50 Cal. App.4th at p. 172.) "The court is presumed to have considered all of the relevant factors in the absence of an affirmative record to the contrary." (*People v. Myers* (1999) 69 Cal. App.4th 305, 310.)

We conclude that Defendant has not borne his burden of affirmatively showing error, because the court considered probation and denied it. Further, the court's comments about the effect of the multiplicity of sexual assaults on the children, the suffering the victims experienced when young, and the inability of even a lifetime sentence to rectify the harm to the victims, demonstrate the court's determination that probation for defendant would not be in the best interest of the victims. (See former § 1203.066, subd. (c)(2).) The court could not have found all five prerequisites for probation. (*Groomes*, supra, 14 Cal.App.4th at p. 89.)

Any possible error was harmless beyond a reasonable doubt. (*Chapman v. California* (1967) 386 U.S. 18, 24 (harmless error standard for federal constitutional error).) Even if the court had granted probation on the three counts of committing a lewd act, Defendant was still facing a sentence of 180 years to life on his 12 other convictions. Granting probation on the three lewd-act convictions would have had no appreciable effect on defendant's sentence.

(Lodgment No. 6, *People v. Nunez*, D075261, slip op. at 4-12.)

/ / /

### 1. Procedural Default

Respondent first contends claim one is procedurally defaulted in this Court because it was denied by the state court under California's contemporaneous objection rule, which precludes raising a claim on appeal that was forfeited by lack of objection at trial. (ECF No. 22-1 at 9-10.) As quoted above, the state appellate court found claim one forfeited by defense counsel's failure to object at sentencing but went on to deny the claim on the merits. The fact that the state court addressed the merits of the claim in addition to finding it forfeited under state law does not prevent the claim from being procedurally defaulted in this Court. *Carriger v. Lewis*, 971 F.2d 329, 333 (9th Cir. 1992) (en banc).

In order to preclude federal habeas review based on a procedural default, a state procedural bar must rest on a state ground which is "independent" of federal law and "adequate" to bar federal review. *Coleman v. Thompson*, 501 U.S. 722, 735 (1991). To be "independent" the state law basis for the decision must not be interwoven with federal law. *Michigan v. Long*, 463 U.S. 1032, 1040-41 (1983). To be "adequate," the state procedural bar must be "clear, consistently applied, and well-established at the time of the petitioner's purported default." *Calderon v. Bean*, 96 F.3d 1126, 1129 (9th Cir. 1996).

Respondent has the initial burden of pleading as an affirmative defense that a failure to satisfy a state procedural rule forecloses federal review. *Bennett v. Mueller*, 322 F.3d 573, 586 (9th Cir. 2003). If Respondent is successful, the burden shifts to Petitioner to challenge the independence or adequacy of the procedural bar. *Id.* If Petitioner satisfies that burden, the ultimate burden falls on Respondent. *Id*.

The Ninth Circuit has recognized California's contemporaneous objection rule as an adequate and independent state procedural rule. *See Zapata v. Vasquez*, 788 F.3d 1106, 1111-12 (9th Cir. 2015) (recognizing California contemporaneous objection rule as an adequate and independent state ground that barred federal habeas review). Respondent has therefore carried the initial burden. The burden has shifted to Petitioner, which he may satisfy "by asserting specific factual allegations that demonstrate the inadequacy of the state procedure." *Bennett*, 322 F.3d at 586. Petitioner concedes that California's

contemporaneous objection rule is an independent and adequate state ground. (ECF No. 36 at 12.) Accordingly, the Court finds claim one is procedurally defaulted.

Petitioner argues that any default should be excused because state law did not require an objection at sentencing, because his trial counsel rendered constitutionally ineffective assistance by failing to ensure the court was aware of its sentencing discretion and failing to retain an expert to provide a psychological assessment of his suitability for probation, and because he is actually innocent. (ECF No. 17 at 16-17, 41.) Petitioner is unable to avoid default based on his contention that state law did not require an objection at sentencing, as that argument was explicitly addressed and rejected by the appellate court based on a determination of state law. *See Peltier v. Wright*, 15 F.3d 860, 862 (9th Cir. 1994) ("'[S]tate courts are the ultimate expositors of state law,' and [federal habeas courts] are bound by the state's construction except where it appears that its interpretation is an obvious subterfuge to evade the consideration of a federal issue."), quoting *Mullaney v. Wilbur*, 421 U.S. 684, 691 (1975).

The Court can, however, address the merits of a procedurally defaulted claim if Petitioner can demonstrate cause for the failure to satisfy the state procedural rule and prejudice arising from the default, or if a fundamental miscarriage of justice would result from the Court not reaching the merits of the defaulted claim. *Coleman*, 501 U.S. at 750. If Petitioner can show he received constitutionally ineffective assistance of counsel at sentencing, he may be able to establish cause to excuse the default. *See Edwards v. Carpenter*, 529 U.S. 446, 451 (2000) (noting that although the Supreme Court has "not identified with precision exactly what constitutes 'cause' to excuse a procedural default, [it has] acknowledged that in certain circumstances counsel's ineffectiveness in failing properly to preserve the claim for review in state court will suffice."), citing *Murray v. Carrier*, 477 U.S. 478, 488-89 (1986). As to actual innocence, if Petitioner "presents evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error, the petitioner should be allowed to pass through the gateway and

argue the merits of his underlying claims." *Schlup v. Delo*, 513 U.S. 298, 316 (1995).

Even assuming Petitioner could satisfy those provisions, federal habeas relief is not available on the merits of claim one for the reasons discussed below. The Court will therefore deny habeas relief without addressing whether Petitioner can establish cause and prejudice or a fundamental miscarriage of justice sufficient to excuse the default. *See Ayala v. Chappell*, 829 F.3d 1081, 1096 (9th Cir. 2016) (approving of district court's determination that development of the record regarding procedural default was unnecessary where claim clearly failed on the merits), citing *Franklin v. Johnson*, 290 F.3d 1223, 1232 (9th Cir. 2002) ("Procedural bar issues are not infrequently more complex than the merits . . ., so it may well make sense in some instances to proceed to the merits if the result will be the same.")

### 2. Merits

In order to obtain federal habeas relief with respect to a claim which was adjudicated on the merits in state court, a federal habeas petitioner must first demonstrate that the state court adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). If Petitioner can satisfy either provision, or they do not apply, a *de novo* review is required to determine whether a federal constitutional violation has been established. *Hardy v. Chappell*, 849 F.3d 803, 820 (9th Cir. 2016); *see also Fry v. Pliler*, 551 U.S. 112, 119 (2007) (holding that § 2254(d) "sets forth a precondition to the grant of habeas relief . . ., not an entitlement to it.")

A state court's decision may be "contrary to" clearly established Supreme Court precedent (1) "if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases" or (2) "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless

arrives at a result different from [Supreme Court] precedent." *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application" of clearly established federal law occurs "if the state court identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case," or "either unreasonably extends a legal principle from our precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Id*. at 407.

Clearly established federal law "refers to the holdings, as opposed to the dicta, of [Supreme Court] decisions as of the time of the relevant state-court decision." *Williams*, 529 U.S. at 412. "Factual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary, § 2254(e)(1), and a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding, § 2254(e)(1)." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

Petitioner claims that by applying the law in effect at the time he was tried and sentenced, which did not give the trial judge discretion to consider probation or concurrent sentences on the three lewd act counts, rather than the law in effect at the time of the offenses which provided such discretion, his federal due process rights were violated under ex post facto principles. (ECF No. 17 at 12, 15-41.) Respondent answers that the state court reasonably found that this claim lacked evidentiary support because the trial judge's comments at sentencing demonstrated that any assumed misapprehension of the law the trial judge held was belied by the fact that the judge exercised discretion to deny probation or run the sentences concurrent, and that Petitioner has identified no overlooked evidence which may have changed the judge's opinion. (ECF No. 22-1 at 11.)

As quoted above, the state appellate court found that the trial court was presumptively aware it had discretion to sentence Petitioner to probation on the three lewd act counts, and the record supported a finding that the trial judge was aware of that discretion because he considered and denied probation on those counts, thus applying the

law in effect at the time of the offenses. It found that the trial court observed that those three counts involved hundreds of lewd acts involving substantial sexual contact against three very young girls which made their lives "pure hell" which even a lifetime sentence for Petitioner would not rectify, concluded there was no reasonable probability the trial judge would have granted probation on those three counts or run the sentences concurrent while sentencing Petitioner to consecutive terms of fifteen years to life on the other twelve counts, and noted that probation on the three lewd act counts would have no appreciable effect on what would still be a sentence of 180 years to life on the remaining twelve counts of rape. (Lodgment No. 6, *People v. Nunez*, D075261, slip op. at 9-12.)

"It is settled, by decisions of this Court so well known that their citations may be dispensed with, that any statute . . . which makes more burdensome the punishment for a crime, after its commission . . . is prohibited as *ex post facto*." *Collins v. Youngblood*, 497 U.S. 37, 42 (1990), quoting *Beazell v. Ohio*, 269 U.S. 167, 169-70 (1925). Application of a statute which removes discretion from a sentencer constitutes an ex post facto violation. *Murtishaw v. Woodford*, 255 F.3d 926, 965 (9th Cir. 2001), citing *Lindsey v. Washington*, 301 U.S. 397, 399-401 (1936) ("[T]he ex post facto clause looks to the standard of punishment prescribed by a statute, rather than the sentence actually imposed. The Constitution forbids the application of any new punitive measure to a crime already consummated, to the detriment or material disadvantage of the wrongdoer.")

Thus, clearly established federal law provides that in order to constitute an ex post facto violation, a law must be applied to events occurring before its enactment and "must disadvantage the offender affected by it." *Weaver v. Graham*, 450 U.S. 24, 29 (1981). Here, the state court determined that the old law was applied because the trial court was presumptively aware of its discretion to impose probation or run the three lewd act sentences concurrent, that the record supported that the presumption because the trial judge exercised that discretion in considering whether probation was appropriate and rejected it emphatically, and was not likely to run the sentences concurrent in light of running the other twelve sentences consecutive. The trial judge, after commenting on

what the victims said at the sentencing hearing and how Petitioner's actions affected their lives, and after stating that: "The things that I heard [during trial] touched me very, very much," then concluded: "Accordingly, probation is denied, and I am going to -- and maybe it's just for me, for my satisfaction, that probation is denied." (ECF No. 23-10 at 12.) Even assuming that passage could be reasonably understood to communicate that the trial judge thought the law did not provide discretion to impose probation and was exercising discretion for his own satisfaction, it is still objectively reasonable for the state court to find the trial judge was aware of and exercised discretion to consider probation because the presumption of correctness of that state court finding has not been rebutted. *See Lockyer v. Andrade*, 538 U.S. 63, 75 (2003) (holding that in order to satisfy § 2254(d)(1), "[i]t is not enough that a federal habeas court, in its independent review of the legal question, is left with a firm conviction that the state court was erroneous. … Rather, that application must be objectively unreasonable.") (quote marks and citations omitted); *see also Miller-El*, 545 U.S. at 240 (in order to satisfy § 2254(d)(2), a petitioner must show "the [state court] conclusion to be 'an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.' Thus, we presume the [state] court's factual findings to be sound unless [petitioner] rebuts the 'presumption of correctness by clear and convincing evidence.'"), quoting 28 U.S.C. § 2254(d)(2)&(e)(1). In addition, the record supports a finding that Petitioner was not disadvantaged by the change in law because the trial court applied the old law, explicitly considered and rejected probation as allowed under the old law, and presumably considered and rejected running the sentences consecutive as allowed under the old law. *See Weaver*, 450 U.S. at 29 (holding that in order to constitute an ex post facto violation, a law must be applied to events occurring before its enactment and "must disadvantage the offender affected by it.")

The state court adjudication of claim one is not objectively unreasonable within the meaning of 28 U.S.C. § 2254(d)(1) because the state court did not apply a rule that contradicts the governing law set forth in the Supreme Court cases cited above, or arrive

at a result different from those cases, nor unreasonably apply that precedent to Petitioner's claim or unreasonably extend or refuse to extend those legal principles to his case. *Williams*, 529 U.S. at 405-07; *see also Harrington v. Richter*, 562 U.S. 86, 102 (2011) ("If this standard is difficult to meet, that is because it was meant to be. As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal-court relitigation of claims already rejected in state proceedings. It preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [the Supreme] Court's precedents.") (citation omitted). Neither is there any basis in the record to find the state court adjudication involved an objectively unreasonable determination of the facts under 28 U.S.C. § 2254(d)(2). *Miller-El*, 537 U.S. at 340.

Habeas relief is denied with respect to claim one because: (1) it is procedurally defaulted, and (2) assuming Petitioner could overcome the default, the adjudication of the claim by the state court is objectively reasonable within the meaning of 28 U.S.C. § 2254(d)(1)-(2).[2] Petitioner's request for an evidentiary hearing is denied because one is not necessary where, as here, the federal claim can be denied based on the state court record and the allegations, even if true, do not provide a basis for habeas relief. *Campbell v. Wood*, 18 F.3d 662, 679 (9th Cir. 1994); *see also Schriro v. Landrigan*, 550 U.S. 465, 474 (2007) ("It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing.")

/ / /

---

[2]  Although a federal habeas court would ordinarily determine whether an alleged federal constitutional error is harmless, *see Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993), and the application of harmless error by a state court such as occurred here is ordinarily subject to § 2254(d) deference, *see Mitchell v. Esparza*, 540 U.S. 12, 18 (2003), the Ninth Circuit has declined to find ex post facto error at sentencing with respect to the removal of sentencing discretion to be a trial-type error subject to harmless error review in federal court. *Williams v. Roe*, 421 F.3d 883, 888 (9th Cir. 2005).

### B.    Claim Two

Petitioner alleges in claim two that he received ineffective assistance of counsel by trial counsel's failure to: (1) excuse for cause seven jurors, (2) investigate and present medical evidence of Petitioner's hearing loss, (3) seek to exclude the pretext call, (4) introduce medical examinations of the victims from 1996, and (5) object to portions of the prosecutor's closing argument. (ECF No. 17 at 41-65.)

The only state court to which this claim was presented is the state supreme court in a habeas petition. (Lodgment No. 9, ECF No. 23-17 at 3-6, 17-159.) That petition was denied in an order which stated: "Petition for writ of habeas corpus denied." (Lodgment No. 10, ECF No. 23-18 at 1.) The silent denial of claim two by the state supreme court is presumptively a decision on the merits of the claim. *Hunter v. Aispuro*, 982 F.2d 344, 347-48 (9th Cir. 1992); *Richter*, 562 U.S. at 99-100 (holding that an unexplained denial of a claim by the California Supreme Court is an adjudication on the merits entitled to AEDPA deference unless "there is reason to think some other explanation for the state court's decision is more likely.") "Federal habeas review is not *de novo* when the state court does not supply reasoning for its decision, but an independent review of the record is required to determine whether the state court clearly erred in its application of controlling federal law." *Delgado v. Lewis*, 223 F.3d 976, 982 (9th Cir. 2000); *see also Pirtle v. Morgan*, 313 F.3d 1160, 1167 (9th Cir. 2002) (holding that when the state court reaches the merits of a claim but provides no reasoning to support is conclusion, "although we independently review the record, we still defer to the state court's ultimate decision.") The Court "must determine what arguments or theories . . . could have supported the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of this Court." *Richter*, 562 U.S. at 102.

### 1. Timeliness

Respondent first contends claim two is untimely because it was presented to the state court after the one-year federal statute of limitations expired. (ECF No. 22-1 at 11-

13.)  Petitioner replies that his original federal Petition, which contained only claim one, was filed within the one-year federal statute of limitations, and that this Court extended the limitations period for claim two when it granted his motion for stay and abeyance which Respondent did not oppose. (ECF No. 36 at 14-15.)

A one-year period of limitations applies to a federal petition for a writ of habeas corpus by a person in custody under a state court judgment which runs from the latest of:

(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1)(A)-(D).

The limitations period began to run under § 2244(d)(1)(A) on the day Petitioner's conviction became final on direct appeal. There is no basis in the record to find a different commencement date under § 2244(d)(1)(B)-(D) because Petitioner does not rely on a state-created impediment or new case law, and because, as is clear from the discussion on the merits of claim two below, the nature of the ineffective assistance of trial counsel claims indicates he was aware of the claims at the time of trial. *See Hasan v. Galaza*, 254 F.3d 1150, 1154 n.3 (9th Cir. 2001) (limitation period began to run when petitioner knew or should have known or through diligence could have discovered important facts, not when he became aware of their legal significance).

Because Petitioner did not seek certiorari in the United States Supreme Court, his

conviction became final on the last day he could have sought such relief. *Miranda v. Castro*, 292 F.3d 1063, 1065 (9th Cir. 2002). He had 150 days to do so following the October 14, 2020, denial of his state supreme court petition for review on direct appeal. *See* Order List, 589 U.S. (extending time to seek certiorari from 90 to 150 days for deadlines falling after March 19, 2020). 150 days from October 14, 2020, fell on Saturday March 13, 2021, and the last day to file a certiorari petition was Monday March 15, 2021. *See* Fed. R. Civ. P. 6(a)(1)(C) ("if the last day is a Saturday, Sunday or legal holiday, the period continues to run until the end of the next day that is not a Saturday, Sunday or legal holiday.") The one-year limitations period began running the next day, March 16, 2021. *Bowen v. Roe*, 188 F.3d 1157, 1159 (9th Cir. 2002) (the one-year limitations period begins when the period to file certiorari expires). A federal habeas petition was due within one year, no later than March 15, 2022. *See* 28 U.S.C. § 2244(d)(1)(A). The original federal Petition, which contained only claim one, was constructively filed by Petitioner on December 1, 2021, the date he handed it to prison authorities for mailing to the Court, *see Houston v. Lack*, 487 U.S. 266, 276 (1988), over three months before the limitations period was set to expire.

On the same day Petitioner filed his original federal Petition, he filed a motion for stay and abeyance seeking to return to state court to exhaust claim two under *King v. Ryan*, 564 F.3d 1133 (9th Cir. 2009) (permitting stay of fully exhausted petition where statute of limitations may result in loss of potentially meritorious claim). (ECF No. 3.) That motion was granted as unopposed on June 7, 2022, seven months after it was filed and four months after the statute of limitations expired, and this action was stayed under *King*. (ECF Nos. 10-11.) Petitioner constructively filed his state habeas petition in the state supreme court presenting claim two on May 25, 2022. (Lodgment No. 9, ECF No. 23-17 at 73.) He therefore filed his state habeas petition while his stay motion was pending in this Court a little over two months after the limitations period expired, absent tolling. *See Laws v. Lamarque*, 351 F.3d 919, 922 (9th Cir. 2003) (recognizing that the federal one-year limitations period is statutorily tolled while state collateral review

proceedings are pending and subject to equitably tolling when extraordinary circumstances beyond a prisoner's control make it impossible to timely file a federal petition).

Respondent correctly observes that a petition for state post-conviction relief filed after the expiration of the federal one-year statute of limitations does not toll the limitations period. *See Jiminez v. Rice*, 276 F.3d 478, 482 (9th Cir. 2001) (statutory tolling unavailable for state habeas petition filed after the limitations period expired). The presumption that the silent denial of claim two by the state supreme court is a decision on the merits does not excuse this Court from determining whether the state habeas petition was nevertheless untimely in state court for federal statute of limitations purposes. *See Evans v. Chavis*, 546 U.S. 189, 198 (2006) (holding that in the absence of a clear indication that a petition was timely or untimely, a federal court "must itself examine the delay in each case and determine what the state courts would have held in respect to timeliness.")

Petitioner argues that by granting his unopposed motion for stay this Court extended the limitations period, to which Respondent did not object, and in addition that the limitations period should be equitably tolled while he was seeking help to identify and present claim two to the state court. (ECF No. 36 at 14-15.) Because Petitioner's stay motion was filed prior to expiration of the statute of limitations, if the Court had granted his unopposed motion prior to the expiration of the statute of limitations, rather than seven months after it was filed, he could have been eligible for statutory tolling if he had filed his state habeas petition when his stay motion was granted. *See* 28 U.S.C. § 2244(d)(2) ("The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.") It was Petitioner's failure to file his state habeas petition before the federal limitations period expired which precludes statutory tolling however, as the limitations period was not tolled merely by the filing of his federal petition. *See Duncan v. Walker*, 533 U.S. 167, 181-82 (2001) (absent

some other basis for tolling, the statute of limitations is not tolled while a federal habeas petition is pending). Nevertheless, had the Court granted the stay under *Rhines v. Weber*, 544 U.S. 269 (2005) rather than *King*, claim two could be timely in this Court even though the one-year statute of limitations expired before it was first presented to the state court. *See Pace v. DiGuglielmo*, 544 U.S. 408, 416 (2005) (holding that a state prisoner may timely file "a 'protective' petition in federal court and ask[] the federal court to stay and abey the federal habeas proceedings until state remedies are exhausted."), citing *Rhines*, 544 U.S. at 277 (noting that "granting a stay effectively excuses a petitioner's failure to present his claims first to the state courts."); *King*, 564 F.3d at 1140 ("When implemented, the *Rhines* exception eliminates entirely any limitations issue with regard to the originally unexhausted claims, as the claims remain pending in the federal court throughout.") Furthermore, even if claim two is untimely, Petitioner's claim of entitlement to equitable tolling would need to be addressed prior to dismissal of the claim as untimely. *See e.g. Whalem/Hunt v. Early*, 233 F.3d 1146, 1148 (9th Cir. 2000) (en banc) (finding district court erred in dismissing a habeas petition as untimely without first pursuing factual development of equitable tolling claim).

As set forth below, claim two is clearly without merit. Because the one-year statute of limitations expired while Petitioner's stay motion was pending and because the Court would need to consider the availability of equitable tolling, the Court finds judicial efficiency is served by addressing the merits of claim two rather than deciding whether it was presented within the one-year federal limitations period. *See Franklin*, 290 F.3d at 1232 ("[C]ourts are empowered to, and in some cases should, reach the merits of habeas petitions if they are . . . clearly not meritorious despite an asserted procedural bar.")

### 2. Merits

To show constitutionally ineffective assistance of counsel, counsel's performance must have been deficient, which "requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Counsel's deficient

performance must also have prejudiced the defense, which requires showing that "counsel's errors were so serious as to deprive [Petitioner] of a fair trial, a trial whose result is reliable." *Id.* To establish prejudice, Petitioner must demonstrate a reasonable probability that the result of the proceeding would have been different absent the error. *Id.* at 694. A reasonable probability is "a probability sufficient to undermine confidence in the outcome." *Id.* Both deficient performance and prejudice must be shown, although a reviewing court need not examine both prongs if either one is not established. *Id.* at 687.

Review under *Strickland* is "highly deferential" of a state court decision, and federal habeas review is "doubly" deferential when applying § 2254(d) to a state court adjudication of an ineffective assistance of counsel claim. *Cullen v. Pinholster*, 563 U.S. 170, 190 (2011). "When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Richter*, 562 U.S. at 105.

### a) Excuse jurors for cause

Petitioner contends trial counsel should have sought to excuse for cause seven potential jurors, none of whom served on his jury, after they made statements during voir dire regarding their personal views on and experiences with child molestation. (ECF No. 17 at 41-50.) Respondent answers that because none of the seven jurors sat on Petitioner's jury, this claim is obviously without merit. (ECF No 22-1 at 14.) Petitioner replies that the jurors' "inflammatory statements impregnated all the other impaneled jurors to convict [Petitioner] with bias statements." (ECF No. 36 at 16.)

Petitioner has not explained how trial counsel could have challenged the jurors for cause based on the statements they made during voir dire before they made the statements, or how challenging them for cause after they made their statements would have cured any potential contamination of the other jurors. To the extent he contends counsel should have sought to disqualify the entire jury panel based on the statements of those jurors during void dire, he has not shown any biased juror sat on his jury and there is no basis to presume bias arising from the voir dire answers identified in the Petition.

*See Adams v. Texas*, 448 U.S. 38, 45 (1980) (a jury must be comprised of individuals who "will consider and decide the facts impartially and conscientiously apply the law as charged by the court."); *Tinsley v. Borg*, 895 F.2d 520, 527 (9th Cir. 1990) ("Only in 'extreme' or 'extraordinary' cases should bias be presumed.") The state supreme court could have reasonably denied this claim on the basis that Petitioner did not show deficient performance or prejudice from trial counsel's failure to seek to excuse the potential jurors for cause or move to disqualify the panel. *See Richter*, 562 U.S. at 110 ("Representation is constitutionally ineffective only if it 'so undermined the proper functioning of the adversarial process' that the defendant was denied a fair trial."), quoting *Strickland*, 466 U.S. at 686.

### b) Medical evidence of Petitioner's hearing loss

Petitioner contends trial counsel should have: (1) called doctor Catnick from Mercy Hospital and an unnamed doctor from Kaiser Hospital to testify about ear surgeries he underwent as a child and an adult, and seek to introduce medical records of those surgeries, and (2) obtain and introduce evidence from a hearing test he took in June 2018, of copy of which is attached to the Petition as Exhibit 2 (ECF No. 17-4 at 1-4), which he contends indicates his hearing is deficient and impaired and could have established he could not hear and had to read lips to understand what was being said to him. (ECF No. 17 at 50-59; ECF No. 17-1 at 1.) He states that he testified at trial that he has problems with his hearing, needs to be close to someone to hear them, and received the pretext call on an outside deck where trucks back up to make deliveries while he was scrubbing equipment so he could not hear everything his daughters said and thought they were talking about physical abuse not sexual abuse. (ECF No. 17 at 7-8.) Although he repeatedly argues that it is reasonably probable that the results of his trial would have been different had this evidence been introduced, and that the state court rejection of this claim was contrary to or involved an unreasonable application of clearly established federal law, he does not indicate why, other than to show he might not have heard what his daughters were saying during the pretext call. (*Id*. at 52-55.)

Respondent answers that Petitioner has not presented documentation that ear surgery occurred or a declaration from counsel, and speculation that such evidence was available and exculpatory is insufficient to warrant relief. (ECF No. 22-1 at 14-15.) Respondent also argues that even though Petitioner attaches the audiology report to the Petition, there is no declaration from counsel regarding why it was not introduced, and it is possible counsel could have reasonably decided not to argue to the jury that Petitioner could not hear his daughters during the pretext call as that argument is refuted by the evidence that Petitioner carried on a telephone conversation and responded coherently to statements and questions during the call. (*Id.* at 15.) Petitioner replies that he does not need a declaration from counsel because he has submitted his own declaration. (ECF No. 36 at 18-19.) His declaration attached to the First Amended Petition recounts the efforts he made to convince trial counsel to obtain his medical records. (ECF No. 17-1 at 1-2.)

As quoted above, the state court found that: "E.N. and C.N. made a pretext call to defendant. E.N. accused defendant of having sex with her and C.N. throughout their childhood. Defendant apologized. Defendant called C.N. a week later and offered to give her $200 if she would stay silent." (Lodgment No. 6, *People v. Nunez*, D075261, slip op. at 4.) A transcript of the pretext call is in the record, and it shows Petitioner was engaged in a lengthy, detailed conversation without any indication he had difficulty communicating with his daughters. (*See* ECF No. 23-1 at 117-53.) Defense counsel argued to the jury in closing that the pretext call was insufficient to carry the prosecution's high burden of proof because: (a) Petitioner testified he suffered hearing loss as a result of maggots in his ear as a child leading to ear surgery as a child and as an adult, (b) a babysitter testified about his difficulty hearing, (c) background noise interfered with the call, (d) Petitioner and his daughters spoke Spanish during the call but the English translation provided to the jury was misleading in that it stated they were referring to sexual abuse when they were in fact referring to physical abuse, and (e) it was undisputed that the daughters pushed the mute button on their phone at some point but it was unclear when, precluding any admission if Petitioner was not responding to

25

what they were saying. (ECF No. 23-8 at 47-54.) Attached to the First Amended Petition is a letter from Petitioner's appellate counsel indicating that at Petitioner's request appellate counsel investigated whether trial counsel was ineffective for failing to hire an expert witness to testify about his hearing loss. (ECF No. 17-4 at 18.) Appellate counsel did not raise that issue on appeal despite presenting an ineffective assistance of trial counsel argument regarding the failure to object at sentencing. (ECF No. 23-11 at 35-38.)

In light of the evidence in the record that Petitioner was able to coherently carry on a conversation with his daughters during the pretext call which included admissions of guilt but no indication Petitioner had difficulty communicating, the state court could have reasonably denied this claim on the basis that counsel was not deficient in failing to present additional evidence of Petitioner's ear surgeries or hearing test, or that Petitioner was not prejudiced by that failure, because counsel did in fact argue there was such evidence in the record which, coupled with the uncertainty of the translation, background noise, and use of the mute button, created reasonable doubt as to whether Petitioner made admissions. *See Strickland*, 466 U.S. at 689 ("There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way.")

### c)  Exclude the pretext call

Petitioner contends trial counsel should have objected to introduction of the recorded pretext call and sought to have it excluded on the basis that he had difficulty hearing what his daughters were saying. (ECF No. 17 at 55-57.) Respondent answers that the pretext call was properly admitted under state hearsay rules, and because Petitioner's challenge goes to the weight of the evidence and not its admissibility, defense counsel could not have rendered ineffective assistance by making a meritless objection. (ECF No. 22-1 at 15.) Petitioner replies that the call was not admissible, and counsel should have sought to exclude it. (ECF No. 39 at 17-18.)

The state court could have reasonably denied this claim on the basis that counsel was not deficient in failing to seek to exclude introduction of the pretext call because it

was clearly admissible under state law. *See People v. Riel*, 22 Cal.4th 1153, 1189 (2000) (a defendant's "silence, evasion, or equivocation may be considered as a tacit admission of the statements made in his presence."); *People v. Simmons*, 28 Cal.2d 699, 712 (1946) (the theory behind an adoptive admission "is that the natural reaction of an innocent man to an untrue accusation is to enter a prompt denial.") The state court could have also reasonably found that counsel's decision to argue there was reasonable doubt as to whether the call constituted an admission rather than raise a useless evidentiary objection was a reasonable tactical decision. *Strickland*, 466 U.S. at 690 ("[T]he court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment."); *Richter*, 562 U.S. at 105 ("When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.")

### d)  Victims' medical examinations

Petitioner contends trial counsel should have called a medical examiner from the Polinsky Center who examined the victims in 1996 and introduce medical reports generated from the examinations, which would have shown the victims were all virgins and were never touched sexually. (ECF No. 17 at 59-61.) Respondent answers that Petitioner has failed to establish that such evidence exists, and that in any case defense counsel argued to the jury that the prosecution's failure to present evidence regarding such examinations was a basis for reasonable doubt that the victims were sexually abused. (ECF No. 22-1 at 15-16.) Petitioner replies that his own declaration states that he asked counsel numerous times to go to the Polinsky Center and to obtain examination records and introduce them at trial, and to call the person who examined his daughters to testify. (ECF No. 36 at 19-20; ECF No. 17-1 at 2.)

Defense counsel argued to the jury they could draw a reasonable conclusion from the prosecution's failure to present evidence of examinations conducted on the victims at the Polinsky Center, where the children lived for up to three weeks before being returned

home, that "there was a finding at that time that [Petitioner] did nothing wrong." (ECF No. 23-8 at 47.) Petitioner presents a letter from his appellate counsel stating that, at Petitioner's request, appellate counsel investigated whether trial counsel was ineffective for failing to obtain medical records of the victims. (ECF No. 17-4 at 18.) Appellate counsel did not raise the issue on appeal despite presenting an ineffective assistance of trial counsel argument for failure to object at sentencing. (ECF No. 23-11 at 35-38.)

Although Petitioner has presented evidence that he requested his trial and appellate counsel to determine whether evidence of physical examinations of the children at the Polinsky Center existed, there is no indication in the record such evidence exists, and his trial counsel used the lack of such evidence to argue that the prosecution's failure to present such records permitted the jury to draw a reasonable inference that any examinations conducted on the victims exonerated Petitioner. The state court could have reasonably denied relief as to this claim on the basis that Petitioner had shown neither deficient performance nor prejudice because he failed to overcome the "strong presumption that counsel's conduct . . . might be considered sound trial strategy." *Strickland*, 466 U.S. at 689; *see also Bible v. Ryan*, 571 F.3d 860, 891 (9th Cir. 2009) (no *Strickland* prejudice where evidence was "speculative in nature."); *Richter*, 562 U.S. at 105 (habeas relief unavailable if "there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.")

### e) Prosecutor's closing argument

Finally, Petitioner contends his trial counsel should have objected to those portions of the prosecutor's argument which were improper and expressed personal opinions of his guilt and credibility. (ECF No. 17 at 61-65.) Respondent answers that Petitioner has failed to identify any objectionable statements by the prosecutor, and that defense counsel could have reasonably decided not to object to avoid drawing attention to an issue or because he believed the statements would allow him to respond in rebuttal. (ECF No. 22-1 at 16.) Petitioner replies that he has identified improper argument and that the state court unreasonably applied *Strickland* in denying this claim. (ECF No. 36 at 20-21.)

Petitioner contends the prosecutor expressed personal opinions as to his guilt and credibility in opening statements and closing argument, but the passages quoted in the First Amended Petition do not contain any such opinions or improper argument, they merely comment on the evidence. (*See* ECF No. 17 at 62-63.) "Prosecutors have considerable leeway to strike 'hard blows' based on the evidence and all reasonable inferences from the evidence." *United States v. Henderson*, 241 F.3d 638, 652 (9th Cir. 2000*); see also United States v. Molina*, 934 F.2d 1440, 1445 (9th Cir. 1991) ("In a case that essentially reduces to which of two conflicting stores is true, it may be reasonable to infer, and hence to argue, that one of the two sides is lying."), citing *United States v. Birges*, 723 F.2d 666, 672 (9th Cir. 1984) ("It is neither unusual nor improper for a prosecutor to voice doubt about the veracity of a defendant who has taken the stand.") Defense counsel did in fact object twice during the prosecutor's closing argument regarding misstatement of the evidence. (ECF No. 23-8 at 23, 62.)

Petitioner points out that the prosecutor referred to him as a "monster" three times during closing argument, twice at the very beginning of argument (*see* ECF No. 23-8 at 17: "This case is about the intersection between the defendant being a good father and a monster."; *id*. at 18: "[I]t was during the controlled call when she was talking about how, but for the fact that he had sex with them all the time, he was a good dad. And both of those things can be true. You can do good things for your children, but you can also be a monster."), and once at the very end of argument. (*Id*. at 63: "When the door was closed and the lights were off and they thought they were safe in their little beds asleep and the defendant would come in in the middle of the night, take their clothes off, and have his way with them, that's the monster.") In order to rise to the level of a due process violation, "the prosecutors' comments [must have] 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Darden v. Wainwright*, 477 U.S. 168, 181 (1986), quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974); *see also Greer v. Miller*, 483 U.S. 756, 765-66 (1987) ("To constitute a due process violation, the prosecutorial misconduct must be of sufficient significance to result in the denial of

the defendant's right to a fair trial.") (quote marks omitted); *Smith v. Phillips*, 455 U.S. 209, 219 (1982) ("[T]he touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor.")

The prosecutor in *Darden* referred to the defendant as an "animal" and "made several offensive comments reflecting an emotional reaction to the case." *Darden*, 477 U.S. at 179-80. However, the Supreme Court found the trial was not rendered fundamentally unfair by that improper argument because the jury was instructed that their decision was required to be based on the evidence and that argument of counsel was not evidence, and because the heavy weight of the evidence against the defendant reduced any likelihood of an influence on the jury's decision. *Id*. at 181-82.

As in *Darden*, the jury here was instructed that their decision must be based on the evidence presented and that argument of counsel is not evidence. (*See* ECF No. 23-4 at 5-6 ("Remember, the lawyers are not witnesses. Since it's your duty to decide the case solely on the evidence which you see or hear in the case, you must not consider as evidence any statement the lawyers make during trial."); ECF No. 23-8 at 4 ("If you believe the attorneys' comments on the law conflict with my instructions, you must follow my instructions."); *id*. at 6-7 ("Nothing the lawyers say is evidence. In their opening statements and closing arguments, the lawyers discussed the case, but their remarks are not evidence.").) The prosecutor also reminded the jury that: "What we say is not evidence. What the lawyers say is not evidence." (ECF No. 28-8 at 57.)

The prosecutor's use of the term "monster" to describe Petitioner constituted a description of Petitioner's conduct toward the victims, which included, as previously noted, hundreds of instances of sexual abuse which the trial judge found made their lives "pure hell." The state court could have reasonably found that the prosecutor's use of the term "monster" to describe Plaintiff fell within the permissible scope of closing argument, and even if it was objectionable Petitioner was not prejudiced by the failure to object because the statements did not deprive him of a fair trial since the evidence of guilt

was strong and the jury was instructed they were required to base their verdict on the evidence and that the statements of the attorneys are not evidence. *See Tan v. Runnels*, 413 F.3d 1101, 1112 (9th Cir. 2005) ("[U]nder *Darden*, the first issue is whether the prosecutor's remarks were improper and, if so, whether they infected the trial with unfairness.")

Thus, the state court could have reasonably denied this final aspect of claim two on the basis that counsel only objected when appropriate, did not make the inappropriate objections Petitioner contends should have been made, or, if an objection could have been made, made a tactical decision not to call attention to that aspect of the prosecutor's argument. *See Clabourne v. Lewis*, 64 F.3d 1373, 1383 (9th Cir. 1995) ("[R]easonably competent counsel might have many valid reasons for failing to object to the form of opposing counsel's questions or interrupt opposing counsel during opening and closing statements."); *Richter*, 562 U.S. at 110 ("Representation is constitutionally ineffective only if it 'so undermined the proper functioning of the adversarial process' that the defendant was denied a fair trial."), quoting *Strickland*, 466 U.S. at 686.

The Court denies federal habeas relief as to claim two on the basis that, assuming the claim is timely, the adjudication by the state court is objectively reasonable within the meaning of 28 U.S.C. § 2254(d)(1)-(2). Petitioner's request for an evidentiary hearing is denied because one is not necessary where, as here, the federal claim can be denied based on the state court record and Petitioner's allegations, even if true, do not provide a basis for habeas relief. *Campbell*, 18 F.3d at 679; *Schriro*, 550 U.S. at 474.

## V.    CERTIFICATE OF APPEALABILITY

The Court is required to grant or deny a Certificate of Appealability when entering a final order adjudicating a 28 U.S.C. § 2254 habeas petition. *See* Rule 11, rules foll. 28 U.S.C. § 2254. "[T]he only question [in determining whether to grant a Certificate of Appealability] is whether the applicant has shown that 'jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed

further.'" *Buck v. Davis*, 580 U.S. 100, 115 (2017), quoting *Miller-El*, 537 U.S. at 327.

Under that standard, because defense counsel did not object at sentencing regarding application of an ex post facto law resulting in a forfeiture and default of the claim, the Court finds that the issues involved in claim one are adequate to deserve encouragement to proceed further, and that a Certificate of Appealability is appropriate limited to claim one. *See Lambright v. Stewart*, 220 F.3d 1022, 1025 (9th Cir. 2000) (en banc) (the standard for granting a certificate of appealability is lower than that for granting habeas relief, and a court must resolve doubts whether a certificate should issue in the petitioner's favor).

## VI.   CONCLUSION AND ORDER

The First Amended Petition for a Writ of Habeas Corpus (ECF No. 17) is **DENIED** and the Court **ISSUES** a Certificate of Appealability limited to claim one of the First Amended Petition. The Clerk of Court shall enter judgment accordingly.

**IT IS SO ORDERED.**

Dated:  September 1, 2023

Honorable James E. Simmons, Jr.
Unites States District Judge